UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENISE F.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration,<br><br>　　　　Defendant. | Case No. 2:20-cv-05211-SP<br><br>MEMORANDUM OPINION AND ORDER |

## I.

## **INTRODUCTION**

On June 11, 2020, plaintiff Denise F. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking review of a denial of a period of disability and disability insurance benefits ("DIB"). The parties have fully briefed the issue in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents a single disputed issue for decision. She contends the Administrative Law Judge ("ALJ") impermissibly rejected Dr. Paul Johnson's

1

treating opinion. Plaintiff's Mem. in Supp. of Compl. ("P. Mem.") at 5-10; *see* Defendant's Mem. in Supp. of Answer ("D. Mem.") at 1-16..

Having carefully studied the parties' memoranda, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ properly evaluated the medical opinion of plaintiff's treating physician. The court therefore affirms the decision of the Commissioner denying DIB.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was 50 years old on the alleged disability onset date, is a high school graduate. AR at 206, 358. She has past relevant work as an order clerk, technical writer, home helper, accounting clerk, and payroll clerk. AR at 133-34; *see* AR at 27..

On January 17, 2017, plaintiff protectively filed an application for a period of disability and DIB, alleging an onset date of July 15, 2016. AR at 206. Plaintiff claimed she suffered from post-traumatic stress disorder ("PTSD"), back problems, and anxiety. AR at 206-07. Plaintiff's application was initially denied on June 12, 2017. AR at 243.

Plaintiff requested a hearing, which the assigned ALJ held on February 26, 2019. AR at 107. Plaintiff, represented by counsel, appeared and testified at the hearing. AR at 113-33. The ALJ also heard testimony from Alan Cummings, a vocational expert. AR at 133-37. The ALJ denied plaintiff's claim for benefits on April 16, 2019. AR at 13-29.

Applying the well-established five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since July 15, 2016, the alleged onset date. AR at 15.

At step two, the ALJ found that plaintiff suffered from the following severe impairments: cervical spine degenerative disc disease, lumbar spine degenerative

-
-
-

disc disease, left knee osteoarthritis, obesity, PTSD, and anxiety disorder (also noted as depressive and bipolar disorder). AR at 16.

At step three, the ALJ found that plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and determined she had the ability to perform:

> light work as defined in 20 C.F.R. 404.1567(b) except: can lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk 6 hours in an 8-hour day with normal breaks, and sit 6 hours in an 8-hour day with normal breaks; can frequently push and pull; can occasionally climb, balance, stoop, kneel, crouch, and crawl; can frequently walk on uneven terrain, be exposed to hazards such as dangerous moving machinery and unprotected heights, and operate motor vehicles; can perform simple tasks in a routine work environment; can have occasional, superficial contact with the public and coworkers; can make simple decisions; can perform low-stress work, which is defined as involving only occasional decision making and occasional changes in work setting.

AR at 18-19.

The ALJ found, at step four, that plaintiff was unable to perform any past relevant work. AR at 27.

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 nn.5-7 (9th Cir. 1989) (citations omitted). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

At step five, the ALJ considered plaintiff's age, education, work experience, and RFC, and found plaintiff could perform jobs that exist in significant numbers in the national economy, including assembler, inspector, and packager. AR at 28-29. Accordingly, the ALJ concluded plaintiff was not under a disability, as defined in the Social Security Act, at any time from July 15, 2016 through the date of her decision. AR at 29.

Plaintiff filed a timely request for review of the ALJ's decision, but the Appeals Council denied the request for review on April 21, 2020. AR at 1. Accordingly, the ALJ's decision became the final decision of the Commissioner.

## III.

## **STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration ("SSA") must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035 (citation omitted). Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998) (citations omitted); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports

and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Aukland*, 257 F.3d at 1035 (internal quotation marks and citation omitted). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "may not substitute its judgment for that of the ALJ." *Id.* (internal quotation marks and citation omitted).

## IV.
## DISCUSSION

Plaintiff contends the ALJ erred in discounting the opinion of her treating physician, Dr. Johnson. Specifically, she contends the reason given by the ALJ for giving little weight to Dr. Johnson's opinion was not a specific and legitimate reason supported by substantial evidence. P. Mem. at 8-10.

### A. Legal Standard

To determine whether a claimant has a medically determinable impairment, the ALJ considers different types of evidence, including medical evidence. 20 C.F.R. §§ 404.1527(b), 416.927(b).[2] The regulations distinguish among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. 20 C.F.R. §§ 404.1527(c), (e), 416.927(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.027(c)(1)-(2). The opinion of the treating physician is

---

[2] The SSA issued new regulations effective March 27, 2017. All regulations cited in this section are effective for cases filed prior to March 27, 2017. *See* 20 C.F.R. §§ 404.1527(b), 416.927(b).

generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Nevertheless, the ALJ is not bound by the opinion of a treating physician. *Smolen*, 80 F.3d at 1285. If a treating physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight. *Id*. If the treating physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons, supported by substantial evidence, for rejecting it. *Id*. "The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of . . . a treating physician." *Lester*, 81 F.3d at 831 (citations omitted). Additionally, the opinions of a specialist about medical issues related to his or her area of expertise are entitled to more weight than the opinions of a non-specialist. *Smolen*, 80 F.3d at 1285.

**B.     Dr. Johnson's Findings and Treating Opinion**

Dr. Johnson states he began treating plaintiff on October 1, 2015. *See* AR at 705. On November 13, 2017, he completed a "Lumbar Spine Medical Source Statement." *See* AR at 705-08. He diagnosed plaintiff with cervical disc disease, lumbar disc disease, PTSD, and chronic anxiety. AR at 705. He noted that plaintiff complained of severe constant back and neck pain made worse with movement, severe anxiety, and an inability to concentrate due to PTSD. *Id*.

Dr. Johnson concluded that MRIs showed plaintiff had severe multilevel cervical and lumbar disc disease. *Id*. He also found she had neuro-anatomic distribution of pain to her arms and legs. *Id*. He reported that she showed positive objective signs, including a positive seated, straight leg raising test, abnormal gait, reflex loss, muscle spasms, muscle weakness, impaired appetite, and impaired

sleep. *See* AR at 706. He determined that emotional factors contributed to the severity of her symptoms and functional limitations. *Id.* Finally, he found she suffered from side effects of medication, including sleepiness and impeded muscle control. *See id.*

Because of these impairments, Dr. Johnson opined that plaintiff could only: walk one city block without rest or severe pain; sit for 30 minutes at a time before needing to get up; stand for 15 minutes at a time before needing to sit down or walk around; sit, stand, or walk less than two hours total in an eight-hour workday; and work in a job that permits shifting positions at will from sitting, standing, or walking. *See id.*

Dr. Johnson also opined that plaintiff would need to take unscheduled breaks of half an hour every hour during the workday. *See* AR at 707. He concluded that she would need to have her legs elevated at a 90 degree angle for 80 percent of the workday. *See id.* He also opined that she would need to use a cane or other assistive device while standing or walking. *See id.*

Additionally, Dr. Johnson opined that plaintiff could never lift and carry 10 pounds or more in a competitive work situation. *Id.* Instead, she could only rarely lift and carry less than 10 pounds. *See id.* He concluded that she could never twist, stoop, crouch, squat, or climb stairs and ladders. *Id.* He found that she could grasp, turn, or twist objects, perform fine finger manipulations, and reach in front of her body and overhead with her arms only 30 percent of the time during an eight-hour workday. *See id.* He opined that she would likely be off task 25 percent or more of an eight-hour workday. *See* AR at 708. He concluded by opining that her severe anxiety and PTSD would make her unable to tolerate even "low stress" work. *See id.*

C.  **The ALJ's Findings**

The ALJ considered Dr. Johnson's treating opinion and described it in detail.

*See* AR at 25. The ALJ then stated: "I give little weight to Dr. Johnson's opinions as I find such extreme limitations are not consistent with or supported by the mild to moderate findings on imaging and in the medical evidence record (*Infra*)." *Id.*

As an initial matter, the ALJ cited the opinions of one examining physician (Dr. Warren Yu) and two reviewing physicians (Drs. H. Jone and D. Chan), which contradicted Dr. Johnson's opinion to varying degrees.[3] *See* AR at 24-25. The ALJ gave great weight to Dr. Yu's opinion, little weight to Dr. Jone's, and some weight to Dr. Chan's. *See id.*

It is well-established that when a treating or examining doctor's opinion is contradicted by another doctor's opinion, the ALJ need only provide specific and legitimate reasons, supported by substantial evidence, to reject it. *See Smolen*, 80 F.3d at 1285. Plaintiff acknowledges that this is the correct standard for purposes of her challenge. *See* P. Mem. at 10.

The parties' dispute stems from a single word at the end of the paragraph on Dr. Johnson's opinion – "infra." *See* AR at 25. Infra is defined as "later in this text" and is used "as a citational signal to refer to a later-cited authority." *Infra*, Black's Law Dictionary (11th ed. 2019). Plaintiff argues that the medical record discussed by the ALJ after the paragraph at issue does not provide any legitimate reasons, backed by substantial evidence, to reject the physical limitations assessed by Dr. Johnson. *See* P. Mem. at 8-10. Defendant argues that the ALJ's use of the term infra was a scrivener's error, and that she meant to use supra. *See* D. Mem. at 14; *Supra*, Black's Law Dictionary (11th ed. 2019) (supra means "earlier in this text" and is used "as a citational signal to refer to a previously cited authority"). In

---

[3] In her decision, the ALJ also discussed the opinions of Dr. Bong Doan, an examining source, Dr. M. D. Morgan, a reviewing source, and Dr. Sandip Sen, a reviewing source. AR at 25-26. For the reasons discussed below, however, the court finds that the ALJ intended to reject Dr. Johnson's opinion based solely on her discussion *prior* to the paragraph dedicated to Dr. Johnson's opinion at AR 25.

8

a footnote, plaintiff contends that even if the ALJ made a scrivener's error, it would be "demonstrative as to why the Ninth Circuit requires 'specific and legitimate reasons' and more than just a recitation of the medical record and a conclusion." P. Mem. at 9 (citing *Alcaraz v. Comm'r of Soc. Sec.*, 2020 WL 5652314, at *5 (E.D. Cal. Sept. 23, 2020)).

Courts may remand an ALJ's decision if it fails to clearly express the ALJ's conclusion as to disability. *See, e.g.*, *De Gonzalez v. Berryhill*, 2017 WL 3224548, at *3 (C.D. Cal. July 28, 2017); *Hernandez v. Saul*, 2021 WL 84397, at *4 (E.D. Cal. Jan. 11, 2021). Here, however, the court finds the ALJ's use of the term "infra" was a harmless scrivener's error. If "infra" is removed, even if not replaced with "supra" (as was likely intended), the ALJ's reasoning and intent are apparent, and her detailed decision is internally consistent. *See McKenzie v. Kijakazi*, 2021 WL 4279015, at *15 (E.D. Cal. Sept. 21, 2021) (even inconsistent statements may be excused if the ALJ's intent is clear). Prior to the paragraph on Dr. Johnson's opinion, the ALJ provided several reasons for rejecting it, which the court can reasonably infer the ALJ intended to reference in referring to "the mild to moderate findings on imaging and in the medical evidence record." Notably, plaintiff does not challenge any of the ALJ's reasoning found before the paragraph at issue. Thus, she waived any such arguments. *See Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006) (arguments not raised before the district court are generally waived). But even if she had properly challenged the ALJ's reasons, the court finds the ALJ provided specific and legitimate reasons, backed by substantial evidence, to reject Dr. Johnson's controverted opinion.

### 1. Inconsistencies With the Medical Record

The ALJ determined that the physical limitations assessed by Dr. Johnson were inconsistent with the medical evidence record. *See* AR at 25. For instance, Dr. Johnson concluded in November 2017 that plaintiff's spine MRIs showed

severe disc disease (AR at 25, 705), but the ALJ cited medical records from 2017 and the first half of 2018 in which different physicians concluded that those same MRIs showed some degenerative changes but no significant nerve root compression or spinal cord impingement, compression, or stenosis. *See* AR at 20 (citing AR at 552, 560, 578, 587, 605, 614, 623, 641, 650, 659, 676, 679, 688-92, 775-80). Notably, in April 2018, Dr. Onechang Lee reviewed plaintiff's spine MRIs and found a tarlov cyst. *See* AR at 780. However, Dr. Lee concluded that the cyst was likely asymptomatic, and reported otherwise mild findings. *See id.* Months later, in January 2019, Dr. Lee examined plaintiff again and reiterated that "there is no surgical pathology on the MRI C/L spines and I do not believe that she is symptomatic from the tarlov cyst."[4] AR at 679.

The medical record also shows largely normal findings from plaintiff's knees, which contradicts many of the physical limitations assessed by Dr. Johnson. The record starts with a January 2017 MRI of the left knee, which was reportedly normal. *See* AR at 20 (citing AR at 559-60). The following month, an examination of her right knee also revealed unremarkable findings. *See* AR at 21 (citing AR at 523). Nonetheless, although largely normal, X-rays of the left knee taken that same month showed mild medial compartment narrowing and a diagnosis of left knee osteoarthritis. *See* AR at 20 (citing AR at 524). An April 2017 examination of the left knee revealed no effusion, mild edema, range of

---

[4] The ALJ also indicated that plaintiff's back symptoms were generally controlled with prescription medication, physical therapy, and injections, without the need for more aggressive treatment like surgery. *See* AR at 20. To the extent the ALJ believed these treatments were conservative, she is incorrect. The use of narcotics and steroid injections, such as those prescribed to plaintiff (*see* AR at 552), are not considered conservative treatments. *See Christie v. Astrue*, 2011 WL 4368189, at *4 (C.D. Cal. Sept. 16, 2011). The ALJ does not actually characterize this treatment as conservative, but to the extent that may be read as implicit, this does not invalidate the rest of the ALJ's analysis regarding the consistency of Dr. Johnson's opinion with the medical record.

motion of 3-125 degrees, no varus/valgus instability at 0/30, moderate tenderness, mild crepitus, negative McMurray's, and Lachman grade 1A. AR at 21 (citing AR at 516). A June 2018 MRI of the left knee indicated mild to moderate joint effusion, but otherwise revealed many normal findings consistent with prior examinations. *See* AR at 20 (citing AR at 680). The ALJ also noted that the orthopedist who diagnosed plaintiff with left knee osteoarthritis recommended conservative care, including anti-inflammatory medications, activity modification, weight loss, home exercise, physical therapy, and a hinged knee brace for additional stability and comfort. *Id.* (citing AR at 524); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (characterizing physical therapy and anti-inflammatories as conservative); *Ayala v. Berryhill*, 2018 WL 3968229, at *4 (C.D. Cal. Aug. 16, 2018) (knee braces constitute conservative treatment); *Gutierrez v. Comm'r Soc. Sec. Admin.*, 2014 WL 1225118, at *5 (D. Or. Mar. 24, 2014), *aff'd*, 2016 WL 7187397 (9th Cir. Dec. 12, 2016) (recommendation to lose weight to alleviate knee pain constitutes conservative treatment).

Next, the ALJ noted that objective findings from many physical examinations were negative for any neurologic deficit, and instead generally showed normal findings. *See* AR at 20-21. Examinations from February and May of 2017 revealed intact sensation, strength (5/5) bilaterally, normal ranges of motion of the extremities, and a negative straight leg raise. *See* AR at 21 (citing AR at 514, 523). During examinations in April 2018 and January 2019, plaintiff exhibited intact sensation, strength in all muscle groups, DTR 2+ throughout, negative Hoffman, downgoing Babinski, normal-appearing extremities, full range of motion, good capillary refill, and no edema. *See id.* (citing AR at 780, 782).

The ALJ also determined that the medical evidence reflected many normal or mild psychiatric findings. *See* AR at 21. The ALJ acknowledged that, at times, plaintiff appeared dysphoric, tense, anxious, distracted, and restless, and apparent

psychomotor retardation was noted. *See id.* (citing AR at 443, 445, 447, 449, 451). Plaintiff also exhibited circumstantiality in her thought process. *Id.* But no delusions or hallucinations were noted or reported during examinations. *Id.* In general, mental status exams from October 2014 through April 2018 showed that plaintiff appeared clean, neat, alert, oriented in all four spheres, and well-groomed, and had an attitude that was appropriate to the setting, normal speech, normal insight, normal judgment, normal perception of reality, and normal thought content. *See id.* (citing AR at 443, 445, 447, 449, 451, 453, 455, 457, 463, 465, 467, 469, 471, 473, 475, 477, 479, 490-91, 509, 513, 518, 522, 549, 557, 562, 566, 571, 575, 580, 584, 589, 593, 598, 607, 611, 616, 620, 625, 629, 638). Plaintiff also appeared to be stable with medications. *See* AR at 22 (citing AR at 443, 445, 447, 449, 451). This record contradicted Dr. Johnson's opinion that plaintiff's severe anxiety and PTSD would make her unable to tolerate even "low stress" work. *See* AR at 25, 708.

Furthermore, the ALJ noted that the medical record showed normal findings for plaintiff's eyes, ears, nose, throat, cardiovascular system, respiratory system, lymphatic system, and skin. AR at 21 (citing AR at 509, 513, 518, 519, 522). Plaintiff had no excessive kyphosis or scoliosis, no palpable abnormal masses or nodules, and no point tenderness. *Id.* (citing AR at 509, 513, 518, 522). There was no obvious pathology of the shoulders, elbows, wrists, hips, knees, or ankles, and plaintiff's balance and straight leg raise tests were within normal limits. *See id.* (citing AR at 510, 514, 519).

Finally, the ALJ discussed the results of the independent consultative examinations conducted by Drs. Yu and Doan, which were largely consistent with the medical record discussed above. In May 2017, Dr. Doan conducted an independent psychiatric consultative exam, during which plaintiff claimed, among other things, to hear her deceased son speak to her and that she was traumatized

when, four years earlier, her then-fourteen-year-old daughter accused plaintiff's then-husband of molestation. *See* AR at 23 (citing AR at 488). Despite these issues, Dr. Doan reported that plaintiff's mental status exams were generally normal, which is consistent with the mental health findings previously discussed. *See* AR at 23-24 (citing AR at 490-91). And, despite plaintiff's allegations of hearing voices, Dr. Doan concluded that she showed no overt signs or symptoms of mental illness. AR at 24 (citing AR at 489). Plaintiff also denied a history of psychiatric hospitalization and engaged in many activities of daily living ("ADLs"). *See id.* (citing AR at 489-90).

In December 2018, Dr. Yu conducted an orthopedic examination, which revealed many normal to mild findings from plaintiff's cervical spine, thoracic spine, lumbar spine, knees, shoulders, elbows, wrists, hands, hips, ankles, and feet. *See* AR at 22-23 (citing AR at 535-37). A neurologic exam also demonstrated normal reflexes, well-preserved sensation, and grossly intact motor strength in all extremities. *See* AR at 23 (citing AR at 537).

In sum, the reason the ALJ gave for discounting Dr. Johnson's opinion – that it was not supported by the mild to moderate findings in the medical evidence record – was specific, legitimate, and supported by substantial evidence. *See Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014) (ALJ may reject treating opinion if unsupported by the record as a whole or objective medical findings). The ALJ satisfied the substantial evidence requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (cleaned up).

### 2. **Inconsistencies With Other Medical Opinions**

As previously noted, the ALJ also discussed three medical source opinions that contradicted Dr. Johnson's opinion. These opinions are also part of the

13

medical evidence record.

First, in April 2017, Disability Determination Services ("DDS") medical consultant Dr. Jone reviewed plaintiff's medical file and opined that she: could frequently lift and carry, including upward pulling, 25 pounds; could stand or walk, with normal breaks, for a total of about six hours in an eight-hour workday; had an unlimited ability to push or pull, including operation of hand and foot controls; and had frequent to occasional postural limitations, but not manipulative, visual, communicative, or environmental limitations. *See* AR at 24-25 (citing AR at 215-16).

Second, in July 2017, DDS medical consultant Dr. Chan reconsidered Dr. Jone's assessed limitations, and opined that plaintiff: could lift and carry, including upward pulling, 25 pounds occasionally and 10 pounds frequently; could stand, walk, or sit, with normal breaks, for a total of six hours in an eight-hour workday; had an unlimited ability to push or pull, including operation of hand and foot controls; and had occasional postural limitations, but not manipulative, visual, communicative, or environmental limitations. *See* AR at 25 (citing AR at 231-32).

Third, in December 2018, Dr. Yu, an independent orthopedic consultative examiner, opined that plaintiff: could lift and carry 20 pounds occasionally and 10 pounds frequently; could push and pull frequently; could sit, stand, or walk for up to four hours at a time or a total of six out of eight hours; did not need an assistive device; could bend, crouch, stoop, and crawl frequently; could walk on uneven terrain, climb ladders, and work at heights frequently; had no limitations for fingering, handling, feeling, and reaching; could frequently perform postural activities; and could be exposed to various environmental conditions. *See* AR at 24 (citing AR at 537-38, 540).

The ALJ gave great weight to Dr. Yu's opinion, some weight to Dr. Chan's, and little weight to Dr. Jone's. AR at 24-25. Specifically, the ALJ found that Dr.

Yu's assessments were generally reflective of plaintiff's abilities and supported by the overall record. *See* AR at 24. As for Dr. Chan's opinion, the ALJ determined that it was more consistent with the overall record and plaintiff's ability to engage in ADLs. *See* AR at 25. The ALJ's conclusions are supported by the ALJ's careful summary of the record. Accordingly, the opinions of at least Drs. Yu and Chan also serve as substantial evidence to discount Dr. Johnson's opinion. *See Tonapetyan*, 242 F.3d at 1149 (opinion of examining source alone constitutes substantial evidence because it rests on the source's own independent examination); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (opinion of non-examining source may serve as substantial evidence to reject a treating opinion if it is consistent with and supported by other evidence in the record).

### 3.    **Other Reasons Raised by Defendant**

Finally, defendant argues that the ALJ provided other reasons to discount Dr. Johnson's opinion, including: (1) evidence of plaintiff's ability to perform many ADLs; (2) inconsistencies between Dr. Johnson's opinion and his own treatment records; and (3) other contrary medical opinions from Drs. Doan, Morgan, and Sen. *See* D. Mem. at 2, 6. The court disagrees.

First, the ALJ discounted Dr. Johnson's opinion because it was inconsistent with "mild to moderate findings on imaging and in the medical evidence record." AR at 25. Although the ALJ discussed plaintiff's ability to perform certain ADLs in her decision, she did not specifically rely on that discussion in discounting Dr. Johnson's opinion. *See Burrell*, 775 F.3d at 1141 (courts "are constrained to review the reasons the ALJ asserts" (cleaned up)).

Second, the ALJ did not expressly consider any inconsistencies between Dr. Johnson's opinion and his own treatment records. *See id.* Thus, this reason is also not applicable.

     Third, as previously noted, the court finds the ALJ's reference to the medical evidence record in discounting Dr. Johnson's opinion is, in context, implicitly to that medical evidence already then discussed by the ALJ, despite the erroneous use of "infra" at the end of the paragraph dedicated to Dr. Johnson's opinion. Accordingly, the court considered the three opinions the ALJ discussed prior to that paragraph. The ALJ's discussion of the rest of the medical source opinions cited by defendant comes after that paragraph. The court concludes the ALJ did not specifically rely on her findings after the paragraph at issue in rejecting Dr. Johnson's opinion.

     Although the court rejects these arguments, the ALJ nonetheless provided a specific and legitimate reason, supported by substantial evidence, to discount Dr. Johnson's opinion. Accordingly, the ALJ did not err in giving Dr. Johnson's opinion little weight.

## V.
## **CONCLUSION**

     IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing this action with prejudice.

DATED: March 25, 2022

SHERI PYM
United States Magistrate Judge